400 S.E.2d 280

**Louise Maloy HAMSTEAD**

**v.**

**Richard Elbert HAMSTEAD.**

**No. 19529.**

Supreme Court of Appeals of West Virginia.

Dec. 7, 1990.

Robert A. Yahn, Wheeling, for Louise Maloy Hamstead.

Mike Magro, Jr., Morgantown, for Richard Elbert Hamstead.

BROTHERTON, Justice:

This is an appeal by Louise Maloy Hamstead from an order of the Circuit Court of Monongalia County in a domestic relations proceeding. That order declared that the law firm of Hamstead & Hamstead, L.C., was the sole separate property of the appellant's former husband and that certain shares of stock transferred to the law firm, as well as a pension plan for her former husband held by the law firm, were his separate property. On appeal the appellant claims that the court's order is not supported by the law or the evidence and that the property should have been equitably distributed. She also claims that the trial court erred in failing to grant her prejudgment interest from the date of divorce for any amount due as a result of equitable distribution. After reviewing the law and the record, this Court agrees with the appellant's assertions relating to the distribution of assets and reverses the decision of the circuit court on those points. The Court, however, declines to find that

the appellant is entitled to prejudgment interest.

The appellant and Richard Elbert Hamstead were married in 1974. At that time Richard Elbert Hamstead was an attorney practicing law with his father, Ezra Hamstead. Richard Elbert Hamstead had entered the business in 1957, and Ezra Hamstead had established the business in 1924.

From the time of marriage until December 31, 1979, Richard Elbert Hamstead continued to practice law in a partnership with his father. Then on January 1, 1980, he established a legal corporation which took the name of Hamstead & Hamstead, L.C. In conjunction with the establishment of the corporation, he issued $5,000 worth of capital stock to himself in exchange for setting up the corporation. He then transferred all the assets and liabilities of the Hamstead & Hamstead partnership to Hamstead & Hamstead, L.C.

Ezra Hamstead, Richard Elbert Hamstead's father and former law partner, died testate on April 23, 1980, less than four months after the formation of the legal corporation. By his will he devised his entire estate to Richard Elbert Hamstead. Included in the estate were corporate stocks worth some $268,000. Richard Elbert Hamstead subsequently transferred those stocks to the corporation in exchange for a promissory note for $270,000 issued by the corporation.

On April 3, 1984, the appellant instituted a divorce action against Richard Elbert Hamstead. In the course of the divorce proceeding, a dispute arose over the disclosure of certain assets, which was ultimately addressed by this Court in *Hamstead v. Hamstead*, 178 W.Va. 23, 357 S.E.2d 216 (1987). As a result of that opinion, the case was remanded for further development.

Upon remand, the case was referred to a family law master, who conducted hearings and who, on October 17, 1989, filed a recommended decision in the matter. In the decision, the family law master indicated that the various stocks inherited by Richard Elbert Hamstead and any increase in their value were his sole and separate property and not subject to equitable distribution. The master also found that all the assets of Hamstead & Hamstead, L.C., had derived from the inherited stock and sole property of the defendant, Richard Elbert Hamstead. The master, therefore, concluded that the appellant had no interest in the law firm of Hamstead & Hamstead, L.C. The master further found that Richard Elbert Hamstead's pension plan with Hamstead & Hamstead, L.C., was his sole and separate property.

The appellant, who disagreed with the law master's findings, petitioned for review with the circuit court. On November 27, 1989, without conducting a hearing on the petition for review, the circuit court entered a memorandum order which essentially affirmed and adopted the recommended decision of the family law master.

■ On appeal, the appellant's first contention is that the circuit court erred in ruling that she was not entitled to an equitable distribution share of the assets of Hamstead & Hamstead, L.C. She points out that the capital accounts of Hamstead & Hamstead, as reflected on the partnership tax return for the year ending December 31, 1975, the year after she and Richard Elbert Hamstead were married, totalled $1,346.10. The statement of financial condition of Hamstead & Hamstead, L.C., dated June 30, 1984, the year in which she filed for divorce, shows the corporation's net worth to be $423,898.41. She argues that thus nearly the entire net worth of Hamstead & Hamstead, L.C., was accumulated during the marriage of the parties and must, therefore, be classified as marital property. She also points out that it is uncontroverted that the capital stock of Hamstead & Hamstead, L.C., was acquired by her former husband during marriage and that tax returns of Hamstead & Hamstead, L.C., show that only a small portion of the earnings of the corporation were distributed to her former husband as salary. The net income, after taxes and distributions, remained in the corporation and became earned surplus or retained earnings and contributed to the net worth of the corporation.

In West Virginia, the division and distribution of assets held by a married couple in a divorce proceeding are governed by West Virginia's marital property statute, *W. Va. Code*, 48–2–32, which provides, in part:

(c) In the absence of a valid agreement, the court shall presume that all marital property is to be divided equally between the parties, but may alter this distribution, without regard to any attribution of fault to either party which may be alleged or proved in the course of the action, after considering the following:

(1) The extent to which each party has contributed to the acquisition, preservation and maintenance, or increase in value of marital property by monetary contributions, including, but not limited to:

(A) Employment income and other earnings; and

(B) Funds which are separate property.

\* \* \* \* \* \*

Marital property is defined in *W. Va. Code*, 48–2–1(e), as:

(1) All property and earnings acquired by either spouse during a marriage, including every valuable right and interest, corporeal or incorporeal, tangible or intangible, real or personal, regardless of the form of ownership, whether legal or beneficial, whether individually held, held in trust by a third party, or whether held by the parties to the marriage in some form of co-ownership such as joint tenancy or tenancy in common, joint tenancy with the right of survivorship, or any other form of shared ownership recognized in other jurisdictions without this state, except that marital property shall not include separate property as defined in subsection (f) of this section; and

(2) The amount of any increase in value in the separate property of either of the parties to a marriage, which increase results from (A) an expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against separate property, extinguishes liens, or otherwise increases the net value of separate property, or (B)

work performed by either or both of the parties during the marriage.

 In *Whiting v. Whiting,* 183 W.Va. 451, 396 S.E.2d 413 (1990), this Court concluded that this statute, by defining *all* property acquired during marriage as marital property, except in certain limited categories, expresses a marked preference for characterizing property as marital property. This conclusion was restated in syllabus point 3 of *Whiting*, as follows:

W.Va.Code, 48–2–1(e)(1) (1986), defining all property acquired during the marriage as marital property except for certain limited categories of property which are considered separate or nonmarital, expresses a marked preference for characterizing the property of the parties as marital property.

In *Whiting*, the Court went on to explain that the equitable distribution process is a three-step process:

Equitable distribution under W.Va. Code, 48–2–1, *et seq.*, is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in W.Va. Code, 48–2–32.

Syllabus point 1, *Whiting v. Whiting, Id.*

Further, in *Whiting*, the Court stressed that:

For purposes of equitable distribution, "marital property" is defined in W.Va. Code, 48–2–1(e)(1) (1986), as "[a]ll property and earnings acquired by either spouse during a marriage, ... regardless of the form of ownership, ... except that marital property shall not include separate property...." "Separate property" is defined in W.Va. Code, 48–2–1(f), as including property acquired by a spouse before the marriage.

*Whiting v. Whiting,* 183 W.Va. at 454, 396 S.E.2d at 416.

Under the principles relating to distribution of property as well as the definition of marital property established by the Legislature, this Court believes that the stock obtained by the appellant's husband in the

Hamstead & Hamstead law corporation in 1980 while the parties were married must be considered marital property. That stock was issued in exchange for professional services rendered during the time of marriage in forming the corporation, and thus it must be deemed to flow out of earnings during marriage. The record also suggests that almost the entire net worth of the law practice developed during marriage and developed while the appellant's husband was contributing services during marriage to the law practice and came about in substantial part as a result of the retention of the appellant's husband's earnings by the corporation.

 It appears that during this proceeding the appellant's husband took the position that a substantial portion of the value of the law partnership was attributable to the stocks which were his separate property as a result of his inheritance from his father which were contributed to and deposited in the law corporation. Those stocks were subsequently transferred to the corporation in exchange for the $270,000 note payable to the appellant's husband.

In this Court's view, the substitution of the $270,000 note for the stocks essentially altered the character of the stocks as separate property. What, in effect, the corporation did was to use its credit to purchase the stocks from the appellant's husband, and the purchase price was paid in the form of the note which was payable to him separately. The unpaid balance of the note remains a charge against the corporation's assets.

Rather clearly, under *W.Va.Code*, 48–2–1(f)(4), property acquired "during marriage by gift, bequest, devise, descent or distribution" is separate property. Further, the marital distribution statute provides that "[p]roperty acquired by a person during the marriage in exchange for separate property which was acquired before the marriage" is separate property. *W.Va. Code*, 48–2–1(f)(2).

Given the overall scheme of the equitable distribution statute, this Court believes that the Legislature contemplated that when an individual during marriage has property which is separate property within the meaning of *W.Va.Code*, 48–2–1(f), and then exchanges that property for other property which is titled in his name alone, and which is not comingled with marital property, then that other property acquired as a result of the exchange is itself separate property.

Under this rule the note acquired by Mr. Hamstead after the marriage in exchange for the stocks which he had inherited from his father's estate was, and should be distributed as, separate property.

 As previously indicated, since the corporation was created and apparently acquired substantially all its net worth as a result of the appellant's husband's earning activity during marriage, this Court believes that the corporation should be treated as marital property. *See W.Va.Code*, 48–2–1(e); *Whiting v. Whiting, Id.* The Court also believes that the stocks contributed by the appellant's husband must be deemed assets of the corporation and should be considered in arriving at the value of the corporation. Rather clearly they were purchased by the corporation for $270,000 and were not a simple contribution by the appellant's husband. However, the Court further believes that, in any future valuing of the corporation, the amount due on the promissory note, since it is separate property, should be considered a debt owed by the corporation in order to arrive at the net value of the professional corporation, as required by *W.Va.Code*, 48–2–32(d). *See Tankersley v. Tankersley,* 182 W.Va. 627, 390 S.E.2d 826 (1990).

 The appellant next claims that the trial court erred in ruling that the pension plan of Hamstead & Hamstead, L.C., was funded by her former husband's inherited property and was thus not subject to equitable distribution. The appellant points out that the corporate tax return for Hamstead & Hamstead, L.C., for the year ending December 31, 1983, showed a deduction of $97,690.00 made for the pension plan, of which her former husband was the principal beneficiary. She argues that this de-

duction was made out of retained earnings of Hamstead & Hamstead, L.C., earnings which were, in effect, marital property, and that under the circumstances the trial court erred in ruling that the pension plan was funded out of separate property.

As previously indicated, the assets of Hamstead & Hamstead, L.C., must be considered marital property. Rather clearly, the pension plan was funded out of the earnings or assets of that corporation. Consequently, the Court views the appellant's husband's portion of the pension plan as an extension of the corporation and as marital property. The Court further notes that in a number of cases it has been established that pension plans are subject to equitable distribution. *Cross v. Cross*, 178 W.Va. 563, 363 S.E.2d 449 (1987); *Raley v. Raley*, 175 W.Va. 694, 338 S.E.2d 171 (1985).

■ Lastly, the appellant claims that the circuit court erred in failing to rule that she was entitled to prejudgment interest from the date of divorce for any amount due to her as a result of equitable distribution.

*West Virginia Code*, 56–6–31, allows interest on judgments or decrees only in certain circumstances. It provides that:

> Except where it is otherwise provided by law, every judgment or decree for the payment of money entered by any court of this State shall bear interest from the date thereof, whether it be so stated in the judgment or decree or not; Provided, that if the judgment or decree, or any part thereof, is for special damages, as defined below, or for liquidated damages, the amount of such special or liquidated damages shall bear interest from the date the right to bring the same shall have accrued, as determined by the court. Special damages includes lost wages and income, medical expenses, damages to tangible personal property, and similar out-of-pocket expenditures, as determined by the court. The rate of interest shall be ten dollars upon one hundred dollars per annum, and proportionately for a greater or lesser sum, or for a longer or shorter time, notwithstanding any other provisions of the law.

In the present case, the issues involve the distribution of property, and not the award of special or liquidated damages as contemplated by *W.Va.Code*, 56–6–31. In effect, this Court has found that the appellant is entitled to one-half the net worth of her husband's legal corporation, including the stock on deposit in that corporation. The Court has further found that the appellant is entitled to one-half the value of her husband's pension plan, which has apparently accrued an additional value over the years. It has not found that she is entitled to lost wages, medical expenses, or any of the other special damages enumerated in *W.Va.Code*, 56–6–31. Consequently, the Court believes that the appellant's claim regarding prejudgment interest is without merit.

For the reasons stated, the judgment of the Circuit Court of Monongalia County, insofar as it relates to the distribution of the appellant's husband's legal corporation, and the stock held by it, and the appellant's husband's pension plan purchased through that corporation, is reversed and this case is remanded with directions that the circuit court declare the legal corporation, stock in it, and the appellant's husband's pension plan, to be marital property and that the court direct the distribution of those assets in the manner contemplated by law.

Reversed and remanded with directions.