402 S.E.2d 505

Irene GUNN

v.

**HOPE GAS, INC., a West Virginia Corporation; and CNG Transmission Corporation, a Delaware Corporation Registered to do Business in West Virginia.**

No. 19416.

Supreme Court of Appeals of
West Virginia.

Feb. 8, 1991.

Orton Jones, Thomas N. Whittier, Hedges, Jones, Whittier & Hedges, Spencer, for Irene Gunn.

W. Henry Lawrence, IV, Steptoe & Johnson, Clarksburg, for Hope Gas.

PER CURIAM:

On June 15, 1988, the plaintiff, Irene Gunn, filed a complaint in the Circuit Court of Calhoun County seeking injunctive and declaratory relief to enforce a contract with the defendant, Hope Gas, Inc., a West Virginia corporation, to provide her a gas connection and gas service. The plaintiff also sought compensatory damages for the loss of her interest in gas service from a pipeline which was subsequently abandoned pursuant to a Public Service Commission order on July 18, 1988.

Activity relevant to this case began in March, 1978, when the plaintiff conveyed a pipeline right-of-way easement across her

property to Consolidated Gas Supply Corporation ("Consolidated"), the defendant Hope Gas, Inc.'s corporate predecessor. The agreement between the parties, dated March 17, 1978, stated, in relevant part, "[t]hat for and in consideration of $8.00 paid to Grantor, the receipt of which is acknowledged, Grantor does hereby grant unto Consolidated, its successors and assigns, with general warranty, the right of way.... The total consideration paid for the property conveyed by the document to which this declaration is appended is $8.00."

However, the plaintiff alleges that,. as part of the consideration for the easement, Consolidated agreed to provide her with a gas connection and service from an existing pipeline. The plaintiff maintains that a typed, notarized contract was duly executed and filed in the County Commission office in Calhoun County, but was subsequently lost, stolen, or destroyed. Over ten years later, on May 2, 1988, she recorded an undated, handwritten note, allegedly signed by S.W. Rittenhouse, the agent from Consolidated who negotiated the right-of-way. This note states, in its entirety:

> Mrs. Irene Gunn is to have a gas connection on Consolidated Gas Supply Corporation pipe line on ridge in front of her house on south east side. Also to be given 2 Joints of 8″ or 12″ Junk pipe. Gas tap to be made before October 1, 1978
>
> S W Rittenhouse
>
> Leaseman
>
> P.O. Box 488
>
> Cabin Creek W Va
>
> 25035

The plaintiff states that, pursuant to this agreement, she filed an application dated February 17, 1978, with Hope Gas for residential natural gas service by meter. After being connected, the plaintiff received service from the fall of 1978 until September 21, 1984, when she discontinued service from the pipeline because free gas was available to her from a well behind her home. Now, however, because she says the free gas supply is no longer reliable, the plaintiff wants to resume gas service from Hope Gas pursuant to what she characterizes as an agreement "to maintain a gas connection and the availability of gas service." Hope Gas maintains that the plaintiff received gas service from 1978 to 1984 simply as another paying customer and not pursuant to any special agreement.

On February 17, 1987, Hope Gas filed an application with the Public Service Commission (PSC) pursuant to W.Va.Code § 24–3–7 (1986),[1] seeking to discontinue gas service to the seven remaining residential customers served on Line No. H–162, the line which served the plaintiff until she voluntarily discontinued service in 1984. The plaintiff appeared at the PSC's May 19, 1987, abandonment hearing and objected to both the removal of H–162 and the fact that she was not compensated for the removal of the line. The PSC found that because the plaintiff was no longer a Hope Gas customer, she lacked standing to challenge the abandonment. For this reason, the PSC denied the plaintiff's objections and refused to approve a severance payment to her. The abandonment of H–162 was approved by the PSC on July 18, 1988, and no appeal was taken from this order.

---

**1.** West Virginia Code § 24–3–7 (1986) provides that:

> No railroad or other public utility shall abandon all or any portion of its service to the public or the operation of any of its lines which would affect the service it is rendering the public unless and until there shall first have been filed with the public service commission of this state an application for a permit to abandon service and obtained from the commission an order stating that the present and future public convenience and necessity permits such abandonment.

> In the event the commission determines that an application to abandon gas service or any part thereof is in the public interest and required by the present and future public convenience and necessity, it shall include in its order, as a condition of releasing any such utility from its public service obligation to provide gas service, a provision requiring the utility, prior to discontinuing service, to pay the cost reasonably necessary to convert each customer to an alternate fuel source.

Prior to the entry of the PSC order, however, the plaintiff filed her verified complaint in this case on June 15, 1988, requesting both temporary and permanent relief to prohibit Hope Gas from removing H–162 and thereby terminating gas service to her, as well as a declaratory judgment stating that she was entitled to receive continuous gas service. Hope Gas responded to the plaintiff's motion for injunctive relief on August 2, 1988, arguing that the plaintiff was not entitled to injunctive relief once the PSC approved the abandonment of the line serving her area. A hearing on the motion for a temporary injunction was held on September 8, 1988, when the lower court ruled that it lacked jurisdiction to overrule the PSC abandonment approval. The order denying injunctive relief was not appealed.

On December 2, 1988, Hope Gas filed a motion for judgment on the pleadings, asserting that the plaintiff's own allegations established that Hope Gas had fulfilled any contractual agreement that may have existed relating to gas service and that, for this reason, the plaintiff was entitled to no further relief. A hearing was held on this motion on December 12, 1988, at which time the plaintiff moved for leave to file an amended complaint and join an additional party defendant. The amended complaint sought to add CNG Transmission Corporation [2] as a defendant and included a prayer for $15,000 in compensatory damages. The court ordered that the motion for judgment on the pleadings could be treated as a joint motion by Hope Gas and CNG Transmission, and the plaintiff was permitted to file an amended complaint.

On January 19, 1989, the lower court granted the defendants' motion for judgment on the pleadings, concluding that the plaintiff had neither a statutory nor a contractual right to gas service or to compensation upon the termination of service in the area. The plaintiff now appeals from this order, arguing that the lower court erred in granting judgment on the pleadings and not affording her the opportunity to prove the terms of the agreement which existed between the parties.

The plaintiff maintains that her complaint set forth a duty to provide gas, as well as a breach of that duty, with sufficient specificity that she should be entitled to present her case. To support her argument, the plaintiff contends that in the missing contract Hope Gas "agreed ... to provide gas service to plaintiff's dwelling house in exchange for a pipeline right-of-way which was and is permanent." The plaintiff maintains that the lost contract required continuous gas service but that by focusing upon the contents of the handwritten note, "without regard to the pleadings themselves," the lower court "based its ruling upon a misapplication of the significance of the note."

We reject the plaintiff's contention that the lower court improperly considered matters outside of the pleadings. In *Calvert Fire Ins. Co. v. Bauer*, 175 W.Va. 286, 332 S.E.2d 586, 588 (1985), this Court stated that a Rule 12(c) motion for judgment on the pleadings "will not be granted unless the movant clearly establishes that no material issue of fact remains for resolution and that he is entitled to judgment as a matter of law." The defendant points out that all of the documents which were considered by the court below were attached as exhibits to the plaintiff's verified complaint. This Court has stated that "[e]xhibits attached to a complaint are not ordinarily pleadings in the strict sense." *Id.* However, in *Calvert*, we also noted that motions for judgment on the pleadings are rare because it is common for affidavits and other matters outside the pleadings to be filed and considered by the trial court, "which under Rule 12(c) converts the motion into a motion for summary judgment under Rule 56 of the Rules of Civil Procedure." *Id.*, 175 W.Va. at 287, 332 S.E.2d at 587–88. Rule 12(c) of the West Virginia Rules of Civil Procedure provides that:

**2.** CNG Transmission Corporation is identified as an affiliated subsidiary of Hope Gas, Inc. and the owner of pipeline H–162.

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

In this case, the lower court heard arguments of counsel with respect to the motion for judgment on the pleadings and considered exhibits which were attached to the pleadings. The court indicated that it was of the opinion that any contractual obligations existing between the plaintiff and Hope Gas had been fulfilled. However, the court stated that it would withhold any ruling for two weeks in order to give the plaintiff a reasonable opportunity to file a memorandum of law in opposition to the pending motion made by Hope Gas.

Accordingly, we conclude that the court's consideration of documents which supported the pleadings converted the defendant's Rule 12(c) motion into a Rule 56 motion for summary judgment. However, regardless of what it is labelled, the test for whether a motion for summary judgment should be granted is essentially the same as the "rather restrictive standard" applied when ruling on motions for judgment on the pleadings. *Calvert*, 175 W.Va. at 288, 332 S.E.2d at 588. "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus point 3, *Aetna Casualty & Surety Co. v. Federal Ins. Co. of N.Y.*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

In granting the defendant's motion in this case, the lower court stated that "[e]ven accepting as true all of the plaintiff's allegations and exhibits, the plaintiff has no right to judgment." The court found that the handwritten note "simply provides that the plaintiff will receive a gas tap or connection on the line by October 1,

1978. She received this. Nowhere does the note state that continuous gas service is to be provided." Further, the lower court referred to the plaintiff's application for gas service as "evidence of . . . [both parties'] intent that she be treated no differently from any other customer." Finally, we note that the original right-of-way agreement contained no indication that any collateral consideration was being given to the plaintiff in exchange for the easement. The right-of-way agreement simply stated that "[t]he total consideration paid for the property conveyed by the document to which this declaration is appended is $8.00."

We conclude that the lower court properly granted judgment for the defendant, although the motion should have been characterized as a motion for summary judgment. The January 19, 1989, order of the Circuit Court of Calhoun County is affirmed.

Affirmed.